**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERIC HIBBARD, | Case No. 1:25-cv-00886 JLT CDB |
| Plaintiff, | ORDER GRANTING MOTION TO REMAND |
| v. | (Doc. 7) |
| WALMART, INC., et al., | |
| Defendants. | |

Eric Hibbard moves to remand his lawsuit against his former employer, Walmart, Inc., and a district manager.  (Doc. 7.)  Walmart removed the case to federal court based on its allegation that the claims against the manager were a "sham," intended to deprive this court of jurisdiction.  (*See* Doc. 1.)  Walmart has not demonstrated that the manager cannot be liable under any theory, so the action must be remanded.  The motion is **GRANTED**.

## ALLEGATIONS

Hibbard alleges he began working at a Walmart store in Tehachapi, California, in December 2022.  (Doc. 1-1 at 4.)  A few months later, he began to have "significant pain in his feet."  (*Id.*)  He spoke with his supervisor, and a doctor provided by Walmart recommended "a short medical leave" before returning to work with restrictions on the time he spent on his feet and the amount of weight he lifted.  (*Id.* at 4–5.)  When he returned to work, no one spoke with him about his condition, which he describes as a "disability" in his complaint, nor about any

1

accommodations that might have been appropriate.  (*Id.* at 5.)  Instead, the store manager and HR manager "summoned" and "harshly admonished" him for taking leave and for using a scooter to get around the store.  (*Id.*)  When he explained his disability and the doctor's recommendations, they put him on a leave of absence and demanded that he see another doctor in Bakersfield.  (*Id.*)

Hibbard visited the doctor in Bakersfield, who diagnosed him with Achilles tendinosis and an ankle strain.  (*Id.*)  The doctor in Bakersfield also gave him the same recommendations as the doctor he had seen before: spend less time on his feet and limit the amount of weight he carried.  (*See id.*)  When Hibbard asked for an accommodation in line with these recommendations, his supervisors did not respond and instead "continued" his leave of absence.  (*Id.*)  He filed an internal complaint, but to no avail.  (*Id.* at 5–6.)  The third-party administrator of Walmart's leave program advised Hibbard to return to work with a "temporary alternative duty" designation.  (*Id.* at 6.)  So he did.  (*Id.*)  But still, his managers asked him to do work that violated his restrictions.  (*Id.*)  When he complained again to HR, nothing changed.  (*Id.*)  Instead, the company retaliated against him by reducing his scheduled hours, among other mistreatments.  (*See id.* at 6–7.)  He was then terminated based on the pretext that he had been absent from his job.  (*Id.* at 7.)

Hibbard complained to the district manager, Naomi Ream.  (*Id.*)  She acknowledged that Walmart had wrongfully terminated him and assured him he would be rehired and receive back pay.  (*Id.*)  That did not happen.  (*Id.*)  His supervisors reduced his hours again and refused his requests for back pay.  (*Id.*)  After he spoke to Ream again, Walmart "fabricated attendance violations" and terminated him for a second time.  (*Id.* at 7–8.)  Ream did not step in to prevent his second termination.  (*Id.* at 8.)

Hibbard filed this lawsuit against Walmart and Ream in state court in 2025.  (Doc. 1-1 at 2.)  Walmart removed the case to this Court under the diversity jurisdiction statute.  (Doc. 1 at 3–11.)  It contended that Ream's California citizenship was irrelevant because Hibbard had added her as a "sham" defendant in an attempt to deprive federal courts of jurisdiction.  (*See id.* at 4–5.)  Hibbard now moves to remand based on the argument that his claims against Ream are legitimate and viable.  (Doc. 7.)  Walmart opposes the motion.  (Doc. 9.)  The Court found that a hearing was not necessary.  (Doc. 10.)

2

**LEGAL STANDARDS**

A defendant can remove a case to federal court if the federal court would have had original jurisdiction. 28 U.S.C. § 1441(a). The federal diversity jurisdiction statute gives federal district courts original jurisdiction over cases in which the amount in controversy is greater than $75,000 and the citizenship of each plaintiff differs from the citizenship of each defendant, i.e., when there is "complete diversity." *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citing 28 U.S.C. § 1332(a)(1)). "In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Id.*

One way a removing defendant can show that a non-diverse defendant has been fraudulently joined is by proving that the person "cannot be liable on any theory." *Id.* (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)). This is a "'heavy burden,' since there is a 'general presumption against finding fraudulent joinder.'" *Id.* (alteration omitted) (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009)). "[I]f there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* (emphasis in original) (quoting *Hunter*, 582 F.3d at 1044).

This standard "shares some similarities" with the standard that governs motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), but they "are not equivalent." *Id.* at 549. "A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined." *Id.* Arguments that "go to the sufficiency of the complaint, rather than to the possible viability of the [plaintiff's] claims" against the non-diverse defendant "do not establish fraudulent joinder." *Id.* at 552. For example, if a plaintiff could potentially amend the complaint to assert a viable claim against the non-diverse defendant, then that defendant was not fraudulently joined. *See id.* at 550.

**DISCUSSION**

Hibbard asserts one claim against Ream, for intentional infliction of emotional distress. (Doc. 1-1 at 17–18.) To prevail on this claim at trial, he would need to show, among other things,

that Ream's conduct was "extreme and outrageous" and that she either intended to cause him emotional distress or acted with "reckless disregard of the probability of causing" him emotional distress. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993) (quoting *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991)). Conduct is "outrageous" in the necessary way when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (quoting *Christensen*, 54 Cal. 3d at 903).

Hibbard's allegations against Ream fall well short of this mark. He refers to her conduct only three times in his complaint. First, he alleges that she agreed his original termination was "unlawful" and "assured" him that "he would be rehired and receive back pay." (*Id.* at 7.) Second, after he was rehired, he alleges Ream "failed to respond" when he complained that his hours had been reduced. (*Id.*) Third, about a month later, he alleges she "once again failed to take corrective action" after he "informed her that he was still suffering from discrimination and retaliation." (*Id.* at 7–8.) This Court is bound as a practical matter by the Ninth Circuit's interpretation of the relevant California law in *Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1351–52 (9th Cir. 1984). It held in that case that a wrongful discharge, even a "callous" and "insensitive" discharge based on a "pretext," did not "support a tort claim" for intentional infliction of emotional distress under California law. *Id.* at 1352.

Despite this clear shortcoming, the question is not whether his current allegations support a viable claim, nor whether his complaint would withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Grancare*, 889 F.3d at 549–50. It is instead whether "there is a possibility that a state court would find that the complaint states a cause of action," possibly with the benefit of an amendment. *Id.* at 548, 550 (emphasis omitted) (quoting *Hunter*, 582 F.3d at 1046). "California case law is replete with cases where conduct of the employer or one of its agents or employees is so outside the bounds of conduct tolerated by a decent society that it may give rise to a claim for intentional infliction of emotional distress." *Onelum v. Best Buy Stores L.P.*, 948 F. Supp. 2d 1048, 1054 (C.D. Cal. 2013) (quoting *Calero v. Unisys Corp.*, 271 F. Supp. 2d 1172, 1178–79 (N.D. Cal. 2003)). For that reason, California federal district courts have often remanded cases involving claims that a supervisor or manager intentionally inflicted emotional

distress.  *See, e.g., id.* at 1055; *see also, e.g., Johnson v. Wal-Mart Stores, Inc.*, No. 24-02868, 2024 WL 5247110, at \*4–5 (E.D. Cal. Dec. 30, 2024); *Moore v. Walmart, Inc.*, No. 24-01105, 2024 WL 4164604, at \*2 (E.D. Cal. Sept. 12, 2024).

Hibbard argues he could prevail in an emotional distress claim against Ream because she was aware of his disability and even acknowledged that Walmart was in the wrong.  (Doc. 7 at 11.)  He also argues that she ignored his complaints about his supervisors, such as that they were fabricating evidence in an attempt to retaliate against him, and he argues that she gave him the false impression that there would be a resolution, essentially stringing him along and allowing the discrimination and mistreatment to continue.  (*Id.* at 11–12.)  He did not include these allegations in his original complaint, but a state court would likely give him a chance to amend his complaint.  *See, e.g., Johnson*, 2024 WL 5247110, at \*4 (citing *Howard v. County of San Diego*, 184 Cal. App. 4th 1422, 1428 (2010)).  If he did, then it is unclear whether he could state a viable cause of action for intentional infliction of emotional distress under California law.  *See, e.g., Onelum*, 948 F. Supp. 2d at 1053–55 (reviewing ambiguities in the relevant state law).  That uncertainty prevents this Court from concluding now that Ream "cannot be liable on any theory."  *Grancare*, 889 F.3d at 548 (quoting *Ritchey*, 139 F.3d at 1318).  Walmart has thus fallen short of showing she was "fraudulently" joined.  Because the parties are not completely diverse, the Court does not have original jurisdiction under 28 U.S.C. § 1332(a), and the action must be remanded.

**CONCLUSION**

The motion to remand (Doc. 7) is **GRANTED**.  This action is remanded to the Superior Court of the State of California for the County of Kern.

IT IS SO ORDERED.

Dated:   **May 8, 2026**

_____
UNITED STATES DISTRICT JUDGE